Matter of Arias v U.S. Concrete, Inc. (2021 NY Slip Op 05379)





Matter of Arias v U.S. Concrete, Inc.


2021 NY Slip Op 05379


Decided on October 7, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 7, 2021

532731
[*1]In the Matter of the Claim of Danny Arias, Claimant,
v
U.S. Concrete, Inc., et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:September 8, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

LOIS LLC, New York City (Jeremy Janis of counsel), for appellants.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a decision of the Workers' Compensation Board, filed June 16, 2020, which ruled, among other things, that claimant sustained a permanent total disability.
Claimant, a maintenance worker for the employer, filed a claim for workers' compensation benefits alleging that he sustained injuries to his right arm, head, face, jaw, ear and tooth as the result of being struck by a vehicle at work in December 2016. The claim, which initially was established for work-related injuries to claimant's jaw, neck, back and right shoulder, subsequently was amended to include posttraumatic stress disorder. Throughout the pendency of this claim, claimant was evaluated by and received medical care from his treating physician, Seth Schran, and underwent various independent medical examinations, including examinations performed by Paul Kleinman.
At a March 2019 hearing, claimant sought to be classified with a permanent total disability and also raised the issue of a traumatic brain injury. The Workers' Compensation Law Judge (hereinafter WCLJ) found prima facie evidence of a traumatic brain injury, directed the employer's workers' compensation carrier to obtain an independent medical examination with respect thereto and held the issue of permanency in abeyance. Although the examiner in question concluded that claimant had reached maximum medical improvement, he did not directly address the traumatic brain injury alleged. The WCLJ amended the claim to include a traumatic brain injury but noted that, even discounting such injury, the reports tendered by Schran and Kleinman established that claimant was permanently totally disabled. The employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) sought administrative review — as well as to reopen the hearing — contending, among other things, that the medical evidence did not support the classification made by the WCLJ and that it was denied the right to cross-examine Schran as to his conclusions. By decision filed June 16, 2020, the Workers' Compensation Board, among other things, affirmed the WCLJ's finding of a permanent total disability, concluding, as relevant here, that there was "no meaningful distinction" between the medical opinions rendered by Schran and Kleinman and, therefore, the carrier's request for cross-examination was properly denied. The carrier's request for reconsideration and/or full Board review subsequently was denied, and this appeal from the Board's June 2020 decision followed.
"To establish a total disability, a claimant must demonstrate that he or she is totally disabled and unable to engage in any gainful employment" (Matter of Wolfe v Ames Dept. Store, Inc., 159 AD3d 1291, 1292 [2018] [internal quotation marks and citations omitted]; accord Matter of Torres v St. Luke's Roosevelt Hosp., 165 AD3d 1355, 1357 [2018], lv denied 32 NY3d 916 [2019]; see Workers' Compensation Law § 15 [1]; see generally Matter of Burgos v Citywide Cent. [*2]Ins. Program, 148 AD3d 1493, 1495 [2017], affd 30 NY3d 990 [2017]), i.e., "there is no expectation that he or she will rejoin the work force" (Matter of Torres v St. Luke's Roosevelt Hosp., 165 AD3d at 1357 n [internal quotation marks and citation omitted]). The Board is vested with the discretion to evaluate the medical opinions proffered and is free to accept or reject portions thereof (see Matter of Gilliam v DOCCS Wende Corr. Facility, 190 AD3d 1080, 1081 [2021]; Matter of Nasir v BJ's Wholesale Club, Inc., 189 AD3d 1951, 1953 [2020]).
In concluding that claimant was permanently totally disabled, the Board relied upon the report prepared by Schran following his January 2019 permanency evaluation of claimant, as well as the report authored by Kleinman following his independent medical examination of claimant in February 2019. According to Schran, claimant had reached maximum medical improvement and suffered a permanent impairment of his mandible, cervical and lumbar spines and right shoulder and wrist, in addition to sustaining psychiatric injuries and a brain concussion. Specifically, Schran found that claimant had a 29% schedule loss of use of his right shoulder and a 25% schedule loss of use of his mandible/jaw; as to claimant's cervical spine, lumbar spine and brain, Schran assessed class 4 severity rankings of D, F and L, respectively, to those permanent injuries. With respect to claimant's functional capabilities, Schran opined that claimant could never engage in lifting, carrying, pulling, pushing, climbing, kneeling, bending, stooping or squatting, nor could he drive a vehicle or operate machinery. Although Schran indicated that claimant occasionally could, among other things, walk, sit, stand and/or grasp simple objects, he ultimately concluded that claimant could not engage in any work activities — with or without restrictions.
Kleinman agreed that claimant had reached maximum medical improvement, finding that claimant had sustained permanent injuries to his neck, back and right shoulder. More particularly, Kleinman opined that claimant had sustained a 20% schedule loss of use of his right shoulder and, as to claimant's cervical and lumbar spines, assigned class 4 severity rankings of E and F, respectively, to those injuries. Although Kleinman was of the view that claimant was "capable of less than sedentary work," he agreed with Schran that claimant "should not lift, carry, push[] or pull anything" and "should never do climbing, kneeling, bending, stooping[] or squatting." Kleinman similarly agreed that, although claimant "could occasionally sit, occasionally stand[] and occasionally walk," as well as "occasionally do simple grasping," he "should not drive a vehicle [or] operate machinery."
Upon reviewing Schran's and Kleinman's respective reports, the Board found "no meaningful distinction" between the subject opinions and concluded that "[t]he significant permanent restrictions found by both doctors support[ed] a finding [*3]that
. . . claimant [was] incapable of gainful employment." The carrier faults the Board's assessment in this regard, citing Kleinman's opinion that claimant was capable of performing less than sedentary work and contending, among other things, that the medical evidence failed to establish that claimant sustained a totally disabling brain injury. The carrier's argument, however, overlooks two important points.
With respect to the issue of claimant's brain injury, the transcript underlying the WCLJ's decision makes clear that claimant was found to be permanently totally disabled even without considering the impact of his brain injury, and a review of the Board's decision reveals that it reached a similar conclusion. To be sure, the Board referenced Schran's findings relative to claimant's brain injury and credited his opinion as to claimant's overall disability because Schran "evaluated all sites of injury." However, the Board also set forth — in detail — Schran's and Kleinman's respective findings as to claimant's other disabling injuries and, based upon the "convergence of opinions" as to claimant's "significant permanent restrictions" and limited capabilities, the Board concluded that both expert opinions supported a finding that claimant was incapable of gainful employment.
As for the carrier's reliance upon Kleinman's opinion that claimant was capable of performing less than sedentary work, such reliance is misplaced given that Kleinman's actual assessment of claimant's capabilities mirrored the conclusions reached by Schran — namely, that claimant "should not lift, carry, push[] or pull anything," "should never do climbing, kneeling, bending, stooping[] or squatting" and "should not drive a vehicle [or] operate machinery." Stated differently, and as the Board aptly observed, "given the consensus on . . . claimant's physical limitations," the distinction drawn by Kleinman — that claimant was capable of less than sedentary work — is "of no evidentiary value." As the Board's finding that claimant is permanently totally disabled is supported by substantial evidence, it will not be disturbed (see e.g. Matter of Malerba v Ameron Global, Inc., 117 AD3d 1302, 1303 [2014]; Matter of Caezza v Via Health, 111 AD3d 1033, 1034 [2013]; Matter of Eaton v Dellapenna Assoc., 91 AD3d 1008, 1009 [2012]).
Finally, we agree with the Board that there is no meaningful distinction between the expert opinions rendered and, therefore, we cannot say that the Board abused its discretion in denying the carrier's request to cross-examine Schran as to his conclusions (cf. Matter of Bugianishvili v Alliance Refrig. Inc., 195 AD3d 1365, 1366 [2021]; compare Matter of Lewis v Stewart's Mktg. Corp., 90 AD3d 1345, 1346 [2011]). The carrier's remaining arguments, including its assertions that the WCLJ was biased and that it was denied due process, have been examined and found to be lacking in merit.
Garry, P.J., Clark, Aarons and Colangelo, JJ., concur.
ORDERED [*4]that the decision is affirmed, without costs.