Matter of Mondesir v Allied Universal (2026 NY Slip Op 01829)

Matter of Mondesir v Allied Universal

2026 NY Slip Op 01829

Decided on March 26, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 26, 2026

CV-24-1910
[*1]In the Matter of the Claim of Gregory Mondesir, Respondent,
vAllied Universal et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:February 19, 2026

Before:Garry, P.J., Clark, Pritzker, McShan and Corcoran, JJ.

Goldberg Segalla, Rochester (Bradford J. Reid of counsel), for appellants.
The Weinstein Law Group, PLLC, New York City (Rudolf B. Radna of counsel), for Gregory Mondesir, respondent.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for Workers' Compensation Board, respondent.

McShan, J.
Appeal from a decision of the Workers' Compensation Board, filed October 21, 2024, which ruled, among other things, that claimant sustained an accidental injury arising out of and in the course of his employment and awarded workers' compensation benefits.
On March 20, 2022, claimant, a security professional, was walking down to the basement to change into his uniform prior to the start of his shift when he slipped on wet steps and fell head-first down a flight of stairs. Claimant was subsequently discovered approximately an hour later at the bottom of the stairs unable to ambulate and was transported to a hospital emergency room where he presented with, among other things, lacerations to his forehead and a cervical spinal cord injury with partial paralysis. Following a complete trauma and neurological evaluation with imaging studies, claimant underwent emergency C4-C5 anterior cervical diskectomy and fusion and was eventually discharged to a nursing home and rehabilitation center, where he remains. Shortly after the incident, the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) filed a report of injury type (FROI-00, FROI-02 forms) and subsequent report of injury (SROI-04 form) forms indicating that it had knowledge of claimant's injuries and denied the claim, contending, among other reasons, that the cause of claimant's fall was an idiopathic preexisting condition and that the fall occurred outside the scope of claimant's employment.[FN1]
In August 2023, the Workers' Compensation Board found that claimant had submitted prima facie medical evidence for the matter to proceed on the issues of, among other things, accident and causal relationship. Following a hearing as well as submission of, among other things, medical reports and deposition testimony, including testimony from the carrier's consultant who performed a medical examination of claimant, a Workers' Compensation Law Judge established the claim for a work-related injury to the neck and directed that awards be made (from March 30, 2022 to January 24, 2024) at the temporary total disability rate. Upon administrative appeal, the Board found that claimant sustained an unwitnessed and/or unexplained accident at work to warrant application of the Workers' Compensation Law § 21 presumption and that the carrier failed to show that the cause of claimant's fall was idiopathic in nature or otherwise rebut the presumption. The Board also found that, for the period at issue, the medical evidence supported a finding that claimant was temporarily totally disabled. The carrier appeals.
We affirm. "Whether a compensable accident has occurred is a question of fact to be resolved by the Board and its determination will not be disturbed when supported by substantial evidence" (Matter of Duta-Zumba v Urban Atelier Group, LLC, 242 AD3d 1264, 1265 [3d Dept 2025] [internal quotation marks and citations omitted]). "In order for an accidental injury to be compensable [*2]under the Workers' Compensation Law, such injury must arise both out of and in the course of a claimant's employment" (Matter of Bosque v Prime Support Inc., 226 AD3d 1280, 1281 [3d Dept 2024] [internal quotation marks and citations omitted]). " 'Workers' Compensation Law § 21 (1) provides a presumption of compensability for accidents occurring during the course of employment which are unwitnessed or unexplained' " (Mattero of Docking v Lapp Insulators LLC, 179 AD3d 1275, 1276 [3d Dept 2020] [citation omitted], quoting Matter of Babson v Finch Pruyn & Co. Inc., 25 AD3d 936, 937 [3d Dept 2006]; accord Matter of Bosque v Prime Support Inc., 226 AD3d at 1281; see Matter of Silvestri v New York City Tr. Auth., 153 AD3d 1069, 1070 [3d Dept 2017]; Matter of Wichtendahl v Arrow Bus Line, 307 AD2d 400, 401 [3d Dept 2003]; see also Matter of Fallon v National Gypsum Co., 53 AD2d 745, 745 [3d Dept 1976], lv denied 40 NY2d 803 [1976]). "Once a claimant has established his or her entitlement to the presumption, the burden shifts to the carrier to present substantial evidence to the contrary which, as a matter of law, precludes the Board from crediting any explanation of the accident except that offered by the employer" (Matter of Bosque v Prime Support Inc., 226 AD3d at 1281 [internal quotation marks and citations omitted]).
The record reflects that, at the time of the injury, claimant had arrived a few minutes early to work to proceed to the basement to his locker to change into his uniform, which he was required to wear during his shift that night and which was stored in his locker. Claimant explained that, when he opened the door to the staircase, he fell on the first step, landed on the bottom of the staircase and lost consciousness from hitting his head. According to claimant, the steps going down to the basement were made of "slick marble" and were wet at the time of his fall. On the condition of the stairs, although the carrier produced evidence that it did not snow on the night of the incident, claimant explained that there were snow flurries and rain that day and that the stairs were likely wet because the maintenance staff regularly uses the stairs. With respect to the presence of alcohol in claimant's blood — albeit well below the legal limit for intoxication — when claimant was tested at the hospital, he insisted in his testimony that he had not consumed alcohol prior to the fall. Claimant also testified that he did not feel faint or lose consciousness prior to his fall.
The attending emergency room physician testified that, when claimant arrived at the hospital, claimant denied any prior spinal cord conditions and that claimant's injuries were consistent with the fall down a flight of stairs that he observed on the employer's surveillance video. The attending physician also did not characterize claimant's bloodwork as "clinically significant," and he did not attribute claimant's fall to dehydration or anything other than the fact that claimant [*3]slipped and fell. The carrier's consultant, an orthopedic surgeon who performed a medical examination of claimant, indicated that claimant's condition was causally related to claimant slipping on, and falling down, a flight of stairs. The consultant also indicated that there was no evidence in the clinical documentation of a stroke, myocardial infarction or syncopal episode prior to the fall and that, even after reviewing the video of the fall, he still believed that claimant's condition was causally related to his workplace accident and fall and that there were no other alternative causes of the fall. The attending emergency room physician, as well as the carrier's consultant, consistently reported the mechanism of injury and claimant's injuries that they, like claimant, attributed to his slip and fall. Inasmuch as the Board maintains broad authority to draw reasonable inferences from the record evidence and to serve as the sole arbiter of witness credibility, we find that claimant is entitled to the statutory presumption that his injuries arose out of and in the course of his employment (see Matter of Duta-Zumba v Urban Atelier Group, LLC, 242 AD3d at 1265; Matter of Bosque v Prime Support Inc., 226 AD3d at 1282). Moreover, contrary to the carrier's position, "there are no medical opinions in the record connecting claimant's fall and resulting injuries to any idiopathic reasons" (Matter of Duta-Zumba v Urban Atelier Group, LLC, 242 AD3d at 1266 n [internal quotation marks, brackets and citation omitted]), and, therefore, the statutory presumption was not rebutted (see Matter of Bosque v Prime Support Inc., 226 AD3d at 1282; Matter of Quigley v Concern for Ind. Living., 146 AD3d 1185, 1186 [3d Dept 2017]; Matter of Worthington v Samaritan Med. Ctr., 124 AD3d 1155, 1156 [3d Dept 2015]; Matter of Cartwright v Onondaga News Agency, 283 AD2d 837, 838 [3d Dept 2001]).[FN2] Accordingly, upon reviewing the record as a whole, we find that the Board's decision in this respect is supported by substantial evidence (see Matter of Duta-Zumba v Urban Atelier Group, LLC, 242 AD3d at 1265; Matter of Bosque v Prime Support Inc., 226 AD3d at 1282; Matter of Worthington v Samaritan Med. Ctr., 124 AD3d at 1156).
Turning to the Board's finding relative to claimant's degree of disability, "if the Board's finding as to the degree of disablement is supported by substantial evidence, it will not be disturbed by this Court, even if a contrary result would have been reasonable" (Matter of Seide v Brooklyn Hosp. Ctr., 226 AD3d 1187, 1188 [3d Dept 2024] [internal citations omitted]; see Matter of Arias v U.S. Concrete, Inc., 198 AD3d 1052, 1055 [3d Dept 2021]). "The Board is vested with the discretion to evaluate the medical opinions proffered and is free to accept or reject portions thereof" (Matter of Arias v U.S. Concrete, Inc., 198 AD3d at 1054 [citations omitted]). Upon our review, the record medical evidence as a whole clearly supports the Board's determination regarding [*4]claimant's degree of disability (see Matter of Malerba v Ameron Global, Inc., 117 AD3d 1302, 1303 [3d Dept 2014]; Matter of Ferguson v Fruehauf Corp., 156 AD2d 880, 881-882 [3d Dept 1989]). The carrier's consultant who examined claimant in November 2023 indicated that, at that time, claimant was residing in a rehabilitation facility using a wheelchair and was unable to perform most personal hygiene activities and unable to stand on his own. The consultant opined that, although claimant was experiencing some motor function recovery, he continued to have significant spasticity in his extremities and was unable to return to work at that time in any capacity and had a 100% complete total disability. A neurologist who examined claimant in December 2023 reported that claimant was paralyzed from the neck down with quadriparesis and in a wheelchair, has neuropathic pain syndrome and traumatic brain injury; the neurologist also found that claimant had a 100% temporary total disability with a guarded prognosis. Upon these facts, we find no basis to disturb the Board's determination. The carrier's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Garry, P.J., Clark, Pritzker and Corcoran, JJ., concur.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1: Claimant also filed his own claim for workers' compensation benefits (C-3 form) detailing his alleged causally related injuries including head injury with loss of consciousness, paralysis, both hands, both feet and required neck surgery with insertion of a plate and screws.

Footnote 2: Inasmuch as claimant's use of the stairs was for descending toward the basement locker room to change into his required uniform prior to the start of his shift, we find that such conduct was sufficiently work-related, and "claimant's conduct did not so deviate from the course of his employment that it was outside the scope of his employment" (Matter of Ramales v Frank & Nino's Pizza Corp., 238 AD3d 1454, 1456 [3d Dept 2025]; see Matter of Shyti v ABM, 192 AD3d 1309, 1310 [3d Dept 2021]).